IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 05-cv-02597-BNB-MJW

LEON B. MURPHY,

Plaintiff,

v.

R. JAMES NICHOLSON, Secretary of the Department of Veterans Affairs,

Defendant.

_____

## ORDER
_____

This matter is before me on **Defendant's Motion for Summary Judgment and

Memorandum Brief in Support Thereof** [Doc. #28, filed 8/18/06] (the "Motion").  For the

following reasons, the Motion is GRANTED.  Summary judgment shall enter in favor of the

defendant on the plaintiff's claim against him.

## I.  STANDARD OF REVIEW

In ruling on a motion for summary judgment, the facts must be viewed in the light most

favorable to the party opposing the motion and that party must be afforded the benefit of all

reasonable inferences to be drawn from the evidence.  Adickes v. S. H. Kress & Co., 398 U.S.

144, 157 (1970).  Rule 56(c), Fed.R.Civ.P., provides that summary judgment may be rendered if

the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law."  A genuine issue of material fact exists "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of

pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits,

if any, the absence of genuine issues of material fact.  Celotex Corp. v. Catrett, 447 U.S. 317, 323

(1986).  The party opposing the motion is then required to go beyond the pleadings and by

affidavits, depositions, answers to interrogatories and admissions on file, to designate specific

facts showing that there is a genuine issue for trial.  Id. at 324.

## II.  UNDISPUTED MATERIAL FACTS[1]

1.   The plaintiff is an African American male.  *Complaint*, p. 2.  He has been employed by

the Department of Veterans Affairs ("VA") since 1974.  *Motion*, Exhibit A-1, p. 9, l. 25 - p. 10, l.

1.

2.   The plaintiff started his career with the National Cemetery Association ("NCA") in

1985.  Id. at p. 10, ll. 23-24.

3.   In 1986, the plaintiff became the Cemetery Director at the Raleigh National Cemetery

in Raleigh, North Carolina.  *Response*, Exhibit A, p. 11, ll. 4-9.

4.   After Raleigh National Cemetery, the plaintiff became the Cemetery Director at the

Richmond National Cemetery Complex.  Id.  at p. 15, l. 21.

5.   In 1995, the plaintiff became the Cemetery Director at Camp Butler National

---

[1]The parties attach numerous exhibits to their briefs.  Many of the exhibits are not
authenticated, and the parties do not submit any affidavits in an attempt to lay a foundation for
them, establish their authenticity, or provide any basis upon which to find an exception to their
exclusion under the Hearsay Rule.  *Motion*, Exhibits A-2, A-3, A-4, A-7; *Response*, Exhibits 4, 5,
6, 7.  These exhibits are not competent evidence.  As a result, I do not consider any material fact
statements which rely solely on the exhibits for support.

Cemetery in Springfield, Illinois.  Id. at p. 19, ll. 1-5.

6.   In 1999, the plaintiff became the Cemetery Director at the Fort Logan National Cemetery in Denver, Colorado.  Id. at p. 20, ll. 18-24.

7.   Cheryl Row was the plaintiff's supervisor at Fort Logan National Cemetery from February 11, 2001, to September 30, 2001.  Id. at p. 34, ll. 7-10.

8.   In 2001, the plaintiff became the Cemetery Director at Indiantown Gap National Cemetery.  Id. at p. 21, ll. 11-12.

9.   A vacancy was announced for the position of Cemetery Director at the Fort Logan National Cemetery.  *Motion*, Exhibit A-1, p. 51, ll. 7-11.

10.   The plaintiff applied for the position on April 28, 2004, and he was considered for the position.  Id. at ll. 7-23.

11.   Cheryl Row reviewed the applications and made a recommendation to her superior, Mr. Muro, as to the best qualified candidate for the position.  Id. at p. 52, ll. 12-16.

12.   Row did not interview the candidates.  Id. at p. 53, ll. 19-24; Exhibit A-5, ¶ 9.

13.   The plaintiff does not think that interviews were necessary in the hiring process.  Id. at Exhibit A-1, p. 75, ll. 14-18.

14.   In evaluating the candidates, Row reviewed their job applications and their responses to Knowledge, Skills, and Abilities inquiries ("KSAs"), and she used her personal knowledge of the candidates.  Id. at Exhibit A-5, ¶ 13, 15.  In evaluating the KSAs, Row used an NCA Crediting Plan that was provided by the NCA Central Office.  Id.

15.   Row recommended that Trica Blocher be selected.  Id. at ¶ 14.

16.  Row believed that Blocher was better qualified for the position than the plaintiff because Blocher (a) has better written and oral skills, (b) has advanced education, (c) has excellent work experience, (d) answered each KSA question "clearly and expounded upon her skills and abilities in this area of expertise," and (e) "[h]er noted recognition during her work activities with NCA demonstrated her understanding and expertise in cemetery operations." Id. at ¶ 15.

17.  Row recommended Blocher for the position because (a) she has excellent skills in written and oral presentation, (b) she demonstrated an outstanding ability to organize and accomplish needed work, (c) she has an in-depth knowledge of the NCA organization and the expected requirements for a national cemetery, (d) her application presented an exceptional background which established the needed work experience and skills to perform as the Director of the Fort Logan National Cemetery, and (e) her response to the questions in the KSAs clearly established a quality of performance and skills that are needed to lead the Fort Logan National Cemetery staff.  Id. at ¶ 16.

18.  According to Row, Blocher had the following qualifications that the plaintiff did not: (a) excellent written and oral skills, (b) recognized work accomplishments in both NCA and previous jobs, (c) outstanding analytical abilities and problem solving which were documented in the KSAs, and (d) an in-depth understanding of the NCA budget process and funding allocations. Id. at ¶ 17.

19.  Row did not recommend the plaintiff because (a) his application was inadequate, (b) his KSAs were poorly written and did not provide the requested information, (c) the information he provided did not support the needed skills for the Director position at Fort Logan

National Cemetery, and (d) during the six month period that the plaintiff was under Row's direct supervision, she was aware of his weaknesses in written and oral presentations. Id. at ¶ 19.

20. Steve Muro, Director of Field Operations Programs for the NCA, selected Blocher for the position. Id. at Exhibit A-6, ¶¶ 7, 11.

21. Muro selected Blocher for the position based on Row's strong recommendation and the quality and accuracy of Blocher's application. Id. at ¶ 11.

22. Muro believed Blocher was better qualified for the position than the plaintiff because her application was complete and her responses to the required KSAs were indicative of a stronger knowledge of the position. Id.

23. According to Muro, the qualifications possessed by Blocher but not by the plaintiff are (a) the quality and completeness of her application, and (b) "the required [KSAs] showed that Ms. Blocher was clearly the strongest candidate for this position." Id. at ¶ 12.

24. Muro did not select the plaintiff because "[a]mong the application[s] submitted, Mr. Murphy's was not the highest ranked because of the quality of the application he submitted and his lack of thoroughness when answering the required [KSAs]." Id. at ¶ 14.

25. The plaintiff exhausted his administrative remedies prior to filing this action. *Motion*, p. 6; *Complaint*, p. 10 and Exhibit A.

The plaintiff filed his Complaint on December 21, 2005. The Complaint alleges that the plaintiff was subjected to employment discrimination on the basis of race and gender when he was denied the position of Cemetery Director for the Fort Logan National Cemetery.

### III.  ANALYSIS

It is unlawful for an employer to discriminate against an individual because of the

individual's race or gender.  42 U.S.C. § 2000e-2(a).  When, as here, a plaintiff relies on indirect

or circumstantial evidence to establish a claim of race or gender discrimination, the plaintiff has

the initial burden of proving a prima facie case of discrimination.  St. Mary's Honor Center v.

Hicks, 509 U.S. 502, 506 (1993); Young v. Dillon Companies, Inc., 468 F.3d 1243, 1249 (10th

Cir. 2006).  If this burden is met, the burden shifts to the employer to establish a legitimate,

nondiscriminatory reason for its conduct.  St. Mary's Honor Center, 509 U.S. at 506-07; Young,

468 F.3d at 1249.  If the employer meets its burden, the burden shifts back to the plaintiff to show

that the employer's reasons for its conduct are pretext for intentional discrimination.  St. Mary's

Honor Center, 509 U.S. at 515-16; McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802

(1973); Young, 468 F.3d at 1249.

The defendant concedes that the plaintiff has established a *prima facie* case.  *Motion*, p. 8.

Therefore, the burden shifts to the defendant to establish a legitimate, non-discriminatory reason

for its decision to hire Blocher instead of the plaintiff for the position of Cemetery Director at the

Fort Logan National Cemetery.

The defendant's evidence establishes that Row recommended Blocher over the plaintiff

because Blocher had better written and oral skills, an advanced education, excellent work

experience, outstanding analytical abilities and problem solving skills as documented in the KSAs,

an in-depth understanding of the NCA Budget process and funding allocations, and an

understanding and expertise in cemetery operations.  *Motion*, Exhibit A-5, ¶¶ 15-17.  The

defendant's evidence further establishes that Row did not recommend the plaintiff because his

6

application was inadequate, the KSAs were poorly written and did not provide the requested

information, the information provided by the plaintiff did not support the needed skills for the

position, and Row was aware of that the plaintiff had weaknesses in written and oral presentations

from the six months he was under her supervision.  Id. at ¶ 19.  Muro selected Blocher based on

Row's recommendation and the quality and accuracy of Blocher's application, and because

Blocher's answers to the KSAs indicated that she had a stronger knowledge of the position and

was clearly the strongest candidate.  Id. at Exhibit A-6, ¶¶ 11-12.  He did not select the plaintiff

because the application he submitted was not the highest ranked and his answers to the required

KSAs were not thorough.  Id. at ¶ 14.

The defendant's evidence is sufficient to establish a legitimate, non-discriminatory reason

for the decision to hire Blocher instead of the plaintiff, *i.e.*, Blocher was better qualified for the

position than was the plaintiff.  Consequently, the burden shifts back to the plaintiff to show that

the defendant's reasons for hiring Blocher are pretext for intentional discrimination.

> A plaintiff demonstrates pretext by producing evidence of such
> weaknesses, implausibilities, inconsistencies, incoherencies, or
> contradictions in the employer's proffered legitimate reasons for its
> action that a reasonable factfinder could rationally find them
> unworthy of credence and hence infer that the employer did not act
> for the asserted non-discriminatory reasons.  Evidence of pretext
> may include prior treatment of plaintiff; the employer's policy and
> practice regarding minority employment (including statistical data);
> disturbing procedural irregularities (e.g., falsifying or manipulating
> ⋯ criteria); and the use of subjective criteria.

Jaramillo v. Colorado Judicial Dept., 427 F.3d 1303, 1306-07 (10th Cir. 2005) (en banc) (internal

quotations and citations omitted).

The plaintiff asserts several challenges to the defendant's actions in an attempt to show that the defendant's reasons for hiring Blocher are pretextual, as follows:

## A.   Selection Criteria

The plaintiff acknowledges Row's assertion that she considered the following criteria in the selection process: job applications, KSAs, and her personal knowledge of the candidates. *Response*, p. 8 (citing *Motion*, Exhibit A-5).  The plaintiff argues that Row's consideration of her personal knowledge of the candidates is contrary to the defendant's answer to an interrogatory wherein the defendant states that "Ms. Row was instructed that she could not consider outside information that was not in the application materials.  This meant that if she had knowledge of an applicant's experience or background but the applicant did not list that in their materials, she could not use that information to assign a rating." Id.  The plaintiff further asserts that the defendant's answer to the interrogatory is contrary to the Central Office Merit Promotion Plan which states:

> Candidates' experience, education, appraisal, training, awards, and outside activities taken as a whole will be evaluated to the extent that they show possession of each of the rating factors being used. Ratings will be based on available sources of information, such as supervisory appraisals, including the annual performance appraisal; SF-171, Application for Federal Employment, a supplemental qualifications statement providing information relevant to each of the rating factors in the rating guide for the job being filled and the Official Personnel Folder, when available for review.

Id.

It appears that the plaintiff is attempting to show inconsistencies in the defendant's articulation of its selection criteria.

In support of his argument, the plaintiff cites to and provides a copy of the defendant's answer to the interrogatory and a copy of the Central Office Merit Promotion Plan. *Response*, p. 8. The interrogatory responses are not signed and there is no evidence of the identity of the author of the responses. Id. at Exhibit 3. The copy of the Central Office Merit Promotion Plan is not authenticated, and it is not clear from the face of the document whether it is a VA document or whether it applies to the selection process at issue. Id. at Exhibit 4. The interrogatory answers and the Central Office Merit Promotion Plan are not competent evidence.

Even if I could consider the interrogatory answers and the Central Office Merit Promotion Plan, they do not demonstrate any inconsistencies regarding the selection criteria. The defendant's interrogatory answer states that Ms. Row could not consider knowledge of an applicant's experience or background if it was not listed in the application materials. The Central Office Merit Promotion Plan merely lists information to be considered; it does not state whether the information must be found in the application materials or whether one may look outside the application materials for the information. As to Row's testimony, the record does not contain any evidence that Row improperly considered experience or background that was not submitted with the application materials. There is only evidence that her decision not to recommend the plaintiff was based, in part, on her awareness from the six months he was under her supervision that he had weaknesses in written and oral presentations. These weaknesses are related to work performance, not to experience or background. Thus, Row's consideration of the weaknesses did not run contrary to her own testimony, the defendant's answer to the interrogatory, or the Central Office Merit Promotion Plan.

The plaintiff also argues that Row's failure to conduct interviews is contrary to the

Central Office Merit Promotion Plan.  In addition to the evidentiary incompetence of the Central

Office Merit Promotion Plan, the plaintiff admits that the Plan does not mandate interviews, but

merely encourages them, *Response*, p. 9, and that he did not think interviews were necessary in

the hiring process.  *Motion*, Exhibit A-1, p. 75, ll. 14-18.

The plaintiff has failed to establish any inconsistency with regard to the selection criteria.

### B.   Subjectivity of Row's Evaluation

The plaintiff acknowledges Row's assertion that her decision not to select the plaintiff was

based on the following:

> The application submitted by Mr. Murphy was inadequate.  The
> KSAs were poorly written and did not provide the information
> requested.  The information provided by Mr. Murphy did not
> support the needed skills for the Director position at Fort Logan
> National Cemetery.  In addition to his application, during the six
> months Mr. Murphy was under my supervision, I was aware of his
> weaknesses in written and oral presentations.

*Response*, p. 9 (citing *Motion*, Exhibit A-5, p. 3).

The plaintiff argues that Row's evaluation of the plaintiff's application and KSAs was

"completely subjective" because she did not mention his experiences as a Cemetery Director or

his service awards, and because she did not note his weaknesses regarding oral and written

presentations in her performance evaluation of him when she was his supervisor.

The quote cited by the plaintiff is Row's response to the question "[w]hy was the

[plaintiff] *not* selected for this position?"  *Motion*, Exhibit A-5, ¶ 19 (emphasis added).  The

nature of the question focuses on the plaintiff's shortcomings, not his strengths.  It is unreasonable

to conclude that Row's failure to mention the plaintiff's experience and service awards in

10

response to this question renders her evaluation of him "completely subjective."  Moreover, the record does not contain any evidence to support a reasonable inference that Row failed to consider the plaintiff's service awards and experience as a Cemetery Director in the selection process.

I am not persuaded by the plaintiff's argument that Row's evaluation of him was completely subjective as evidenced by her failure to note his weaknesses regarding oral and written presentations in her performance evaluation of him when she was his supervisor because there is no evidence that perceived weaknesses must be documented in writing in order to be considered.  Importantly, Row articulated many other legitimate reasons for not selecting the plaintiff.  Row's failure to document the weaknesses does not render all of the other reasons so unworthy of credence that a reasonable factfinder would have to infer discrimination.

The plaintiff further argues that any personal knowledge Row had of the plaintiff was more than two years old because she never had any discussions with the plaintiff's supervisor at Indiantown Gap National Cemetery.  There is no evidence in the record to support a reasonable inference that Row was required to contact an applicant's current supervisor.  Moreover, there is no evidence that the plaintiff's supervisor at Indiantown Gap National Cemetery would have provided the plaintiff with a positive recommendation.

The plaintiff has failed to establish that Row's evaluation of him was "completely subjective" and, therefore, constituted pretext for discrimination.

### C.  Communication Between Row and Muro

Without any supporting evidence, the plaintiff summarily states that "[i]t is evident that there was no extensive discussion between Mr. Muro and Ms. Row regarding the process and

11

method of evaluating all of the applicants for the final recommendation submitted by Ms. Row.

Hence, it is clear that the selection process utilized for the position was nothing more than

perfunctory and the reasons given why Plaintiff was not selected are pretextual." *Response*, p. 10.

Contrary to this conclusory and unsupported allegation, Muro testified that "[a] teleconference

with Ms. Row, the Deputy Director and myself was conducted to discuss the merits of each

individual applicant." *Motion*, Exhibit A-6, ¶ 8.

### D.  Job Qualifications

The plaintiff argues that the defendant's reasons for hiring Blocher are pretextual because

he is better qualified for the position than is Blocher. *Response*, p. 11.  The plaintiff asserts that

the applications and KSAs show that Blocher had no experience as a Cemetery Director, in

grounds maintenance, and in interments at a national cemetery whereas the plaintiff had several

years of experience in each of these areas. Id. at pp. 11-12.

As with many of the parties' exhibits, the applications and KSAs are not authenticated

and, therefore, are not competent evidence. *Motion*, Exhibit A-7; *Response*, Exhibit 3.  However,

even if the evidence were competent, it is not sufficient to show pretext.  The Tenth Circuit Court

of Appeals has stated:

> We must proceed with caution when considering the relative merits
> of individual employees.  The courts may not "act as a super
> personnel department that second guesses employers' business
> judgments." Simms, 165 F.3d at 1330 (quotation omitted).
> Accordingly, minor differences between a plaintiff's qualifications
> and those of a successful applicant are not sufficient to show
> pretext. Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1319
> (10th Cir.1999), overruled on other grounds, Nat'l R.R. Passenger
> Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106
> (2002).  To show pretext, the disparity in qualifications must be
> "overwhelming." Id. at 1319 (citing Sanchez v. Philip Morris, 992

> F.2d 244, 247-48 (10th Cir.1993)); see also Odom v. Frank, 3 F.3d
> 839, 847 (5th Cir.1993) (explaining that the difference in
> qualifications must be so glaring as to "jump off the page and slap
> us in the face").

Jaramillo, 427 F.3d at 1308-09.

The plaintiff has failed to establish that the disparity between his qualifications and

Blocher's is "overwhelming" or "so glaring as to jump off the page and slap us in the face."

There is no evidence (competent or otherwise) in the record that previous experience as a director

or in grounds maintenance and interments at a national cemetery are required in order to qualify

for the position at issue here.  There is, however, evidence that Blocher was selected because she

(a) has excellent skills in written and oral presentation, (b) demonstrated an outstanding ability to

organize and accomplish needed work, (c) has an in-depth knowledge of the NCA organization

and expected requirements for a national cemetery, (d) has an exceptional background which was

presented in her application which established the needed work experience and skills to perform

as the Director of the Fort Logan National Cemetery, and (e) her response to the questions in the

KSAs clearly established a quality of performance and skills that are needed to lead the Fort

Logan National Cemetery staff.  *Motion*, Exhibit A-5, ¶ 16.  There is also evidence that Row did

not select the plaintiff because (a) his application was inadequate, (b) his KSAs were poorly

written and did not provide the requested information, (c) the information he provided did not

support the needed skills for the Director position at Fort Logan National Cemetery, and (d)

during the six month the plaintiff was under Row's direct supervision, she was aware of his

weaknesses in written and oral presentations.  Id. at ¶ 19.

The plaintiff asserts that the vacancy announcement for the position states that "applicants must have at least 52 weeks of specialized experience equivalent to at least the next lower grade level." *Response*, p. 11.  The plaintiff argues that he possessed this specialized experience and Blocher did not.

The vacancy announcement has not been authenticated and is not competent evidence. *Motion*, Exhibit A-2.  Even if I could consider the vacancy announcement, the plaintiff does not set forth any evidence to show that Blocher did not possess the requisite specialized experience.

The plaintiff has not produced any evidence to show that he was more qualified than Blocher for the position of Cemetery Director at the Fort Logan National Cemetery.

### E.   EEO Complaints Against Row

The plaintiff asserts that by March 2004, ten EEO complaints had been filed against Row. *Response*, p. 13.  The plaintiff attempts to support this assertion with an exhibit that has not been authenticated and, therefore, is not competent evidence. Id. at Exhibit 9.  Even if it were competent evidence, the exhibit does not establish that Row was biased.  Indeed, the exhibit lists the "outcomes" of each EEO complaint, and none of them demonstrates a finding of discrimination against Row.

### IV.   CONCLUSION

The plaintiff has failed to establish that the defendant's reasons for hiring Blocher instead of the plaintiff are pretext for intentional discrimination.  Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment and Memorandum Brief in Support Thereof is GRANTED.  Judgment shall enter against the plaintiff and in favor of the defendant on the plaintiff's discrimination claim.

Dated February 23, 2007.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge